[Civ. No. 55084. Second Dist., Div. One. Sept. 5, 1979.]

METRO U.S. SERVICES, INC., et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

---

**COUNSEL**

Kinkle, Rodiger & Spriggs and John V. Hager for Plaintiffs and Appellants.

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, Arthur D. Rutledge and S. Thomas Todd, Deputy City Attorneys, for Defendants and Respondents.

---

**OPINION**

**ACKERMAN, J.*—**This is an appeal by Metro U.S. Services, Inc. and American Empire Insurance Company, plaintiffs and appellants herein, from a judgment in a declaratory relief action rendered in favor of the City of Los Angeles, defendant and respondent herein.

All the facts and issues were stipulated to in the trial court.

In brief the parties stipulated: Plaintiff Metro U.S. Services, Inc. (hereinafter called Metro) leased to City of Los Angeles (hereinafter called City) a dump truck. Thurman DeWitt Heard, an employee of the City, while driving the truck, had an accident allegedly injuring several persons. Those persons filed complaints (hereinafter referred to as the underlying actions) for damages arising out of the accident. The City, Heard and Metro U.S. Services were named as defendants in the underlying actions. Defendant Metro in no way contributed to the cause of the accident.

It was further stipulated that Metro was insured by American Empire Insurance Company (hereinafter called American) and the City was a "self-insurer." The City would not provide a defense for Metro in the underlying actions.

---

*Assigned by the Chairperson of the Judicial Council.

The declaratory relief action was brought by Metro and American against the City and Heard to determine the following stipulated issues:

1. Does Insurance Code section 11580.9, subdivision (b) apply to the City of Los Angeles as a self-insurer requiring it to provide primary insurance coverage to plaintiff Metro U.S. Services, Inc.?

2. Are plaintiffs entitled to judgment in their favor under the doctrine of implied indemnity?

3. Are plaintiffs entitled to indemnification under Vehicle Code section 17153 for any judgment or settlement required of them to be paid as the owner of the Ford truck?

4. Are plaintiffs entitled to recover their costs, including attorney's fees, incurred in defense of the personal injury actions?

The trial court rendered judgment that plaintiffs take nothing by their complaint.

The issues on appeal are as set forth hereinafter.

I

■   Does the City of Los Angeles, as a self-insurer, fall within the purview of Insurance Code section 11580.9, subdivision (b)?

Answer—No.

If the answer were yes then assumedly the City of Los Angeles would be the primary person responsible as an insurer and the American Empire Insurance Company would be the person secondarily liable by operation of section 11580.9, subdivision (b). Sections 11580.8 and 11580.9 were enacted to settle disputes where two automobile liability insurance policies covered the same occurrence as to who was primarily and who was secondarily responsible.

An analysis of the statutes and cases demonstrates that a self-insurer does not fall within the purview of Insurance Code section 11580.9.

Insurance Code section 11580.9, subdivision (b) provides in part: "(b) Where two or more policies, are applicable to the same loss. . . ."

Appellant argues that the term "policies" should be so interpreted as to include self-insurers within the meaning and purview thereof. We do not agree.

First, it is obvious that the word "policies" as used in subdivision (b) means the same as that used in subdivision (a) where the complete wording is "Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle." The failure to repeat the entire terminology is carried on throughout subdivisions (a) through (f). It is clear "policies" in subdivision (b) means automobile liability insurance policies and there is no contention otherwise.

Second, the overall design of the insurance code relating to automobile insurance carefully demarks self-insurers apart from insurers or holders of policies of insurance. The self-insurer files no policy or contract, nor does he have to comply with any other provisions of the statute respecting mandatory policy provisions, etc. See section 11580.1 Insurance Code for the multiple provisions that an automobile liability policy must contain. A reading of that section demonstrates the obvious impossibility of reading those required provisions into self-insurance. The only sections in the entire Vehicle Code relating to self-insurers of automobiles are sections 16052 and 16053.[1] There are no sections in the Insurance Code relating to self-insurers of automobiles.

---

[1] Section 16052 Vehicle Code relates to the Financial Responsibility Law. It provides: "Proof may be established if the owner of the motor vehicle involved in the accident was a self-insurer. Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in this article."

Section 16053 Vehicle Code relates to the requirements to become a self-insurer. It provides:

"(a) The department may in its discretion, upon application, issue a certificate of self-insurance when it is satisfied that the applicant in whose name more than 25 vehicles are registered is possessed and will continue to be possessed of ability to pay judgments obtained against him in amounts at least equal to the amounts provided in Section 16056. The certificate may be issued authorizing the applicant to act as a self-insurer for either property damage or bodily injury or both. Any person duly qualified under the laws or ordinances of any city or county to act as self-insurer and then acting as such, may upon filing with the department satisfactory evidence thereof, along with the application as may be required by the department, be entitled to receive a certificate of self-insurance.

"(b) Upon not less than five days' notice and a hearing pursuant to the notice, the department may upon reasonable grounds cancel a certificate of self-insurance. Failure to

Third, Insurance Code section 22 and Civil Code section 2527 state that insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability, arising from an unknown or contingent event. A self-insurer enters into no contract to indemnify another. For all intents and purposes the City, to use a popular expression, has chosen to go "bare."

Fourth, the cases have uniformly held that the obligations arising from a policy of insurance do not extend to a self-insurer. In *O'Sullivan* v. *Salvation Army* (1978) 85 Cal.App.3d 58 [147 Cal.Rptr. 729], the court held that the requirements of inclusion of coverage for uninsured motorists mandated for policies of insurance is not required for self-insurers. The court in the *O'Sullivan* case said of the attempt to include self-insurers within the statutory designated policy of insurance ". . . nothing short of legislation on our part can effect the result urged by O'Sullivan in this case." (at p. 62.) In *Glenns Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774, at page 785 [51 Cal.Rptr. 789], the court referring to the question of a self-insurer coming within the concept of an insurance policy stated: ". . . A certificate of self-insurance is not a motor vehicle liability *policy* of insurance. In a word, it is not an insurance policy at all. . . ." (Original italics.)

If the statutory design leaves the self-insured motorist (City) outside the purview of a statute designed to settle disputes between insurance carriers (regarding primary or secondary liability) it is not our function to provide our concept of whether the Legislature would have done it or not. For aught that appears the Legislature may well have believed that the design of self-insurance made it inappropriate to settle the issue in the manner set forth in section 11580.1 for settling disputes between insurance companies or that it was not a source of dispute sufficient to warrant inclusion in this legislation. Certainly the Legislature are as aware as the courts of the need (or not) to determine such issues and the legislation which was originally enacted in 1970 was amended in 1974 and was not enlarged to reflect any interest in this situation. Obviously, the statute did not intend to settle all issues of primary and secondary responsibility. The fact that the statute does not settle all such disputes is not unusual nor call forth upon the court to expand section 11580.9, subdivision (b) of the Insurance Code to cover this particular case.

pay any judgment within 30 days after the judgment has become final and has not been stayed or satisfied shall constitute a reasonable ground for the cancellation of a certificate of self-insurance.

The state evidently has a broader interest in controlling insurance companies and in settling disputes between them as to coverage than it does in controlling self-insurers.

As explained in *Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Code* (1978) 85 Cal.App.3d 481, at page 485 [149 Cal.Rptr. 472], a major reason for the legislation of section 11580.9 Insurance Code was because of the recurring litigation concerning certain provisions in the automobile insurance policies, particularly with the so-called "other insurance" clauses. Such clauses contained terminology rendering the coverage "excess, pro-rata or ineffective." The court noted: "Judicial construction of these provisions were marked by inconsistency, prompting commentators and the courts alike to request legislative clarification. [Citation.] [¶] In 1970 the Legislature responded to these requests with the enactment of section 11580.9. . . ."

In this case while there may be a dispute as to which party has the primary responsibility it does not arise out of any construction of the policy as obviously there is nothing to be construed—there being no policy when one is a self-insurer. In this instance it may well be concluded that the Legislature found no need sufficiently compelling to require the enactment of clarifying legislation.

The trial court was correct in concluding in the findings and conclusions that section 11580.9, subdivision (b) does not apply to the City of Los Angeles as a self-insurer and we affirm that conclusion.

## II

■ Are plaintiffs entitled to a declaratory judgment in their favor under the doctrine of implied indemnity or under Vehicle Code section 17153?[2]

Answer—No. The plaintiffs' cause of action for indemnity or subrogation does not arise until there is a judgment (recovery) or a settlement.

The trial court in answer to stipulated issues 2 and 3 concluded: "2 Plaintiffs are not entitled in this action to judgment under the doctrine of implied indemnity or under Vehicle Code section 17153."

[2] Plaintiffs points 2 and 3 are combined under one heading for the answer is common to both contentions.

Appellant argues that the trial court misinterpreted the holding in the case of *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], and thus came to the wrong conclusion.

The trial court sought to further explain its conclusion by setting forth in the conclusions of law the holdings of those cases which supported that conclusion.

We agree that the explanation of the trial court contained, if not an erroneous statement of the holding in the *American* case, *supra,* certainly an imprecise one. Nonetheless for reasons which we shall explain the ultimate conclusion of the trial court was correct.[3]

It is to be initially noted that plaintiffs', appellants herein, liability under the stipulated set of facts arises only by virtue of the statutory liability imposed by section 17150 Vehicle Code on the owner of the vehicle.[4] This liability has been called "imputed or vicarious."

Under section 17153[5] an owner is entitled to recover from the operator any sums he would be required to pay to the injured party. If the owner pays pursuant to a judgment having been rendered against him the right of subrogation arises under the statute. If the owner settles with the injured party the right to implied indemnity arises. (*Jenne* v. *Wheeler* (1974) 44 Cal.App.3d Supp. 11 [118 Cal.Rptr. 471].)

There being no other basis for imposing liability than the statute, we view the appellants' reference to implied indemnity to mean that which

---

[3]Witkin in 4 California Procedure (2d ed. 1971), at page 3113, states the rule thusly: ". . . the conclusions of law are a relatively useless appendage. The important conclusion of law is the *judgment.* If the findings support the judgment it will be affirmed, regardless of whether the findings support the conclusions, or whether the conclusions of law are consistent or properly stated, or even if the conclusions are omitted entirely. . . ." (Original italics.)

[4]Vehicle Code section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."

[5]"If there is recovery under this chapter against an owner, bailee of an owner, or personal representative of a decedent, the owner, bailee of an owner, or personal representative of a decedent is subrogated to all the rights of the person injured or whose property has been injured and may recover from the operator the total amount of any judgment and costs recovered against the owner, bailee of an owner, or personal representative of a decedent."

arises by virtue of his statutory liability as owner and which would otherwise be allowed under the subrogation section 17153 Vehicle Code if there was a judgment. See section 17153 Vehicle Code authorizing settlement by the owner-subrogee with the injured party.

An analysis of the cases and the statute demonstrate the fact that no cause of action arises prior to judgment or settlement which would support an action for declaratory relief under the circumstance of this case.

In *Dalton* v. *Baldwin* (1944) 64 Cal.App.2d 259 [148 P.2d 665], the court considered the right of an owner of a motor vehicle to maintain an action for subrogation under Vehicle Code section 402, subdivision (d) (now 17153 as amended) prior to rendition of a judgment in the tort action. In the *Dalton* case the owner of the car left the automobile at a carwash and the carwash was to thereafter deliver it to her home. Canfield, the employee of Claugh (the owner of the carwash), had an accident on the way to home of the owner. The owner sought permission to join in the main tort action by way of cross-complaint for subrogation against Canfield and Claugh. Demurrers to the cross-complaint were sustained and motion to strike was granted. The appellate court upheld the action of the lower court stressing that by virtue of the express statutory language "In the event of a recovery" an action for subrogation under the vehicle code did not arise until after there was a recovery (judgment). The appellate court found it unnecessary to decide whether the action could be maintained by way of cross-complaint.[6] (See, *Skeen* v. *Payne* (1960) 183 Cal.App.2d 605 [7 Cal.Rptr. 185], citing the *Dalton* case.)

*Jenne* v. *Wheeler, supra,* 44 Cal.App.3d Supp. 11, was the next case to consider the plight of the subrogee-owner of a vehicle to seek relief where there was no prior judgment. Jenne was the registered owner of a vehicle that was driven by Wheeler. The auto was uninsured. Wheeler had an accident and the driver of the other car recovered from her insurance company under the uninsured motorist coverage. The other driver's insurance company then sued Jenne to recover the amount paid under the uninsured motorist coverage and Jenne settled with the insurance

---

[6]We also deem it unnecessary to decide whether an action for subrogation under Vehicle Code section 17153 can be instituted in the main tort action by way of cross-complaint until the time the issue directly presents itself. However, we call attention to the cases of *Roylance* v. *Doelger* (1962) 57 Cal.2d 255 [19 Cal.Rptr. 7, 368 P.2d 535], and *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, relating to filing cross-complaints in a nonstatutory indemnity case.

company. Jenne then sued Wheeler, the operator of the car, for indemnity and lost in the lower court. The issue before the appellate department of the superior court was whether Jenne was barred from recovery because there was no recovery (judgment) in the tort action, but only a settlement.

The appellate court acknowledged the holding of the *Dalton* case, *supra,* ". . . that *under the statute* a judgment is required before subrogation arises. That proposition is evident from the statutory language itself." (Original italics.) Proceeding from that point of reference the *Jenne* court found that because the statute did not provide a remedy where there was a settlement, as contrasted with a judgment, the statutory remedy was "inadequate" and an action for equitable indemnity would lie.

It is to be noted that the ruling in the *Jenne* case, *supra,* was not that the subrogee has an independent action for indemnity prior to judgment, but only after there was a settlement.

Ordinarily where there is a right to an alternative remedy the courts will not for that reason alone deny relief by way of a declaratory relief action. However, we are not dealing with an alternate remedy, but with an express statutory declaration of when a right arises, i.e., "If there is a recovery. . . ." The courts have never said that under these circumstances where a claim for subrogation only arises out of the statute after recovery (judgment) (§ 17153 Veh. Code), that there is also an independent or alternate right to a prior determination of the right of subrogation (or indemnity) by a declaratory relief action.

Plaintiff relies upon *Goldman v. Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377], for authority that a declaratory relief action is a proper remedy. Appellant states in his brief: "Indeed, the Supreme Court held previously that a separate action for declaratory relief prior to trial in the main action was a proper forum." We need neither agree nor dispute that proposition for the Supreme Court said no such thing. The *Goldman* case was one seeking a determination of indemnity in a declaratory relief action. The Supreme Court ultimately remanded the case to the trial court for a statement of findings of fact on the negligence issue. The court did not say one thing about the propriety of a declaratory relief action and we may assume it was not even raised. An even more persuasive distinction is that the *Goldman* case, *supra,* is

not an action for subrogation under section 17153 of the Vehicle Code. In short, *Goldman* is not applicable.

There is, besides the complete absence of any cases to support allowing a separate independent action for subrogation under the statute prior to judgment a very practical one. The amount the owner-subrogee may have to pay, if anything, is unknown until there is a judgment. The declaratory relief action will not determine that. A declaration that he has a right under the statute to subrogation tells him no more than the statute already tells him.

The conclusion that is apparent from the statutory design and the prior unchallenged cases is that the cause of action does not arise until there is a judgment and there is no right to initiate an action for relief prior to judgment or settlement.

The trial court in the proper exercise of its equitable power in a declaratory relief action and under the applicable cases as a matter of law correctly determined that the plaintiff-appellant was not entitled to judgment in a declaratory relief action.

### III

■ Are plaintiffs entitled to a declaratory judgment in their favor for costs of defense and reasonable attorney's fees?

Answer—No. On the basis of the record before us it is not apparent on what basis appellants might be entitled to attorney's fees or costs. We make no pronouncement as to the right, if any, of appellants to attorney's fees or costs.

The trial court in its conclusion of law stated: "3 Plaintiffs entitlement to costs and attorneys fees is determinable only in the underlying tort actions, in the event the plaintiffs therein recover against the plaintiffs herein."

Plaintiffs claim can only be advanced on the basis on contractual implied indemnity. The only contract known here is one for the lease of the truck and there is nothing in the record that there is any written agreement relating to responsibility of the parties nor concerning performance in any other respect, unlike the cases where the parties

contract with reference to the work to be done. (See *S. F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785].)

Here, the liability of plaintiff arises only out of the fact that plaintiff is the owner of the truck. The owner's responsibility is based upon the statutory liability created by section 17150 et seq. of the Vehicle Code. Section 17153 governing subrogation is completely silent as to the recovery of attorney's fees. Attorney's fees have been held to be not recoverable under statutory subrogation. (See *Robinson* v. *Felch* (1958) 155 Cal.App.2d 842 [318 P.2d 759].)

In *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, at page 5 [148 Cal.Rptr. 419, 582 P.2d 1010], the court noted the general rule contained in Code of Civil Procedure section 1021[7] and stated: "The Legislature has established that in the absence of an express agreement or statute, each party to a lawsuit is responsible for its own attorney's fees."

In view of the apparent lack of authority or basis to award attorney's fees the trial court was correct in declining to rule upon that issue in this action.

The judgment is affirmed.[8] Costs on appeal to respondents.

Lillie, Acting P. J., and Hanson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 1, 1979.

---

[7]Code of Civil Procedure section 1021 provides in part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation for attorneys and counselors at law is left to agreement express or implied, of the parties; . . ."

[8]The court has noted in its examination of the record that the judgment that was entered only ran in favor of the defendant City of Los Angeles. The notice of appeal recites that the appeal is from the judgment in favor of defendants City of Los Angeles and Thurman DeWitt Heard. On remittitur the trial court may correct the judgment if it intended to include the defendant Thurman DeWitt Heard.